IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 5, 2001 Session

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. D. S.

**Appeal from the Juvenile Court for Davidson County**
**File No. 9719-32102     Betty Adams-Green, Judge**

**No. M2000-02380-COA-R3-JV - Filed May 9, 2001**

The parental rights of the petitioner (Mother) to her child , "R.", born January 29, 1997 during her Mother's incarceration, were terminated upon a finding that statutory grounds therefore were proved by clear and convincing evidence. Weighing very carefully the Mother's constitutional right to care for her child, on the one hand, and the best interests of the child, on the other, we vacate the judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and D. MICHAEL SWINEY, JJ., joined.

Kathleen G. Morris, Nashville, Tennessee, for the appellant, D. S.

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

### Background

The Department of Children's Services of the State of Tennessee ("DCS") filed two petitions to terminate the parental rights of D. S. ("Mother") to whom R. was born January 29, 1997. Mother was incarcerated at the time she gave birth; two putative fathers were initially identified, but were eliminated as a result of DNA testing. Because Mother reported that Sawyer was the biological father he was joined in the first petition; after he was eliminated by DNA testing, Mother next

identified Crump as the biological father. He too was eliminated by DNA testing, and thus the biological father remains unknown.

Tennessee Code Annotated § 36-1-113 authorizes the termination of parental rights. This statute provides that termination of such rights must be based upon a finding by the court by clear and convincing evidence that the grounds for termination have been established, and that termination is in the best interests of the child.

The grounds for termination of the parental relationship in this case may be (1) abandonment by the parent, or (2) substantial noncompliance by the parent with a plan of care, or (3) the child has been removed from the home of the parent for a period of six months, and the conditions which led to the child's removal still persist with little likelihood that the condition will be remedied at an early date and thus diminishes the child's chances of early integration into a safe, stable and permanent home. Tenn. Code Ann. § 36-1-113(g)(1)(2)(3)(A).

The trial court found by clear and convincing evidence that R. had been removed from Mother and her unknown father for more than six months and the conditions which led to her removal still persists and therefore prevent her return with little likelihood that the conditions will be remedied at an early date, thus diminishing R.'s chances of early integration into a stable and permanent home. The court further found that Mother and unknown father substantially failed to comply with a Permanency Plan of Care which was reasonable and related to the conditions necessitating removal.

With respect to the best interests of R., the court found that Mother failed to make such an adjustment of circumstances, conduct or conditions as to make it in R.'s best interests to return home in the foreseeable future. The parental relationship was terminated.

## Discussion

The evidence is essentially undisputed.

Mother is 24 years old. She was convicted and sentenced to a term of incarceration for theft, was soon paroled, and while on probation was again charged with theft and forgery for which she was incarcerated. During this period of incarceration, R. was born. It was expected that her grandmother would take her home from the hospital, but she failed to do so, and R. was thereupon placed in the custody of DCS.

Mother is HIV positive, and a former drug user. R. was tested throughout the first two years of her life and never tested positive for HIV.

Mother was released from prison in July 1997 and remained out of jail for approximately one month, during which time she had custody of R. Upon her release, Mother lived with a cousin for a short time. She then visited a friend whom she asked to watch R. while she went to cash a check.

While she was gone, the friend allowed a man who sold drugs to hold R. He approached a vice car with the child and the police called DCS. When she returned, Mother discovered what had happened. She then left the house with R., but was re-arrested soon thereafter and R. returned to the same foster family she lived with previously.

Mother remained incarcerated until February 8, 2000. She was free until March 28, 2000 when she was re-arrested. At the time of trial, she was still in prison, although not yet convicted of any new charges. She remained in jail because she could not post bail and did not know when she would be released.

In summary, Mother has had the custody of R. for about one month owing to her criminal behavior. She participated in a plan of care for R. in October 1998; her obligations under this plan were to resolve all legal problems, provide a home for R. and submit to random drug testing.

### The Issues

The issues on appeal are (1) whether the trial court erred in finding that DCS provided by clear and convincing evidence that the persistence of conditions which led to the removal of R. would subject her to further neglect with little likelihood of remediation, and (2) whether the court erred in finding that DCS proved by clear and convincing evidence that the mother failed to follow the permanency plan for R.

In *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993) the Supreme Court made it clear that a parent "has a constitutional right to the custody, companionship, and care of a child, and should not be deprived thereof except by due process of law." State intervention in the parent-child relationship must be justified. Against these principles we weigh whether the evidence was clear and convincing that the conduct of Mother resulted in, or would result in, substantial harm to R. Clear and convincing evidence is a stringent burden the State must bear; DCS must produce evidence which eliminates any "serious or substantial doubt concerning the correctness to be drawn from the evidence." In a contest between a parent and non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding of substantial harm to the child. Only then may a court engage in a "general best interests" of the child evaluation in making a determination of custody. *In re: Adoption of a female child (Bond v. Mckinzie)*, 896 S.W.2d 546 (Tenn. 1995).

The trial court made no specific findings of fact as required by Tenn. Code Ann. § 36-1-113(K). Mother argues that this oversight, standing alone, requires a reversal of the judgment. We cannot agree that this oversight is as draconian as Mother insists. We must still review the evidence to determine its sufficiency, *see Brooks v. Brooks*, 992 S.W.2d 403 (Tenn. 1999).

The judgment below reflects that the trial court essentially found that Mother's incarceration was sufficient reason to terminate her parental relationship. A difficulty with this rationale is found in the fact that the Legislature provided a specific statute which addresses the precise issue:

The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of 10 or more years, and the child is under 8 years of age at the time the mother is entered by the court.

We note that DCS did not allege this ground for termination, since Mother was not serving a 10-year sentence. Rather, Mother had been paroled from prison following incarceration for theft of property, and had been incarcerated, *but not convicted*, on a new charge. Her incarceration resulted from her inability to make bond.

The record reveals no evidence of the length of the sentence Mother was serving when she was paroled in February 2000. In point of fact, there is no documentary evidence of any criminal conviction. The information is revealed only by Mother's testimony; as nearly as may be deduced, she was convicted of theft of property in 1995. When R. was born in January 1997, Mother was incarcerated for a parole violation. Her only other conviction was in connection with theft of property in September 1997. She was paroled in February 2000, but later arrested on a new charge about which the record is essentially silent. Mother attributes her criminal conduct and her convictions to "being in the wrong place with the wrong people" as distinguished from proactive criminality.

In a similar vein, the record reveals no evidence about the length of time Mother would remain incarcerated, if indeed, she is convicted of the new charge.

## Conclusion

For these reasons we respectfully disagree with the trial judge that DCS proved by clear and convincing evidence that persistence of conditions which would subject R. to further neglect with little likelihood of early remediation, and proved that the continuation of the parent-child relationship diminished R.'s early integration into a permanent home. The record reflects that R. had bonded with her foster home, but as Mother observes, the test is not whether she is bonded to her foster family but whether she can achieve permanency in her mother's care. The record is deficient in this respect, as we have seen, because no proof was offered respecting the nature of the new offense.

Finally, the permanency plan which Mother was found not to have followed was not filed in evidence, *per se*; rather, all orders entered in the case - and there were many such entered - included the plans, and evidence was presented as to the requirements of these plans. Mother argues that she, in fact, did substantially comply with the plan to the extent she was enabled, keeping in mind her incarceration.

We find that the record does not reflect clear and convincing evidence that there is little likelihood the conditions which justified R.'s removal will be unremediable at an early date, or that the best interests of R. require that the parental relationship should be terminated. Accordingly, the judgment is vacated and remanded for further proceedings, without prejudice to the reopening of this case for additional proof. We neither hold nor intimate that incarceration for less than 10 years

cannot suffice to terminate the parental relationship. A difficulty with the proof in this case is found in the fact that the record does not clearly reflect the nature of mother's criminal acts, the precise charges, the precise sentences, the times served, and, particularly, plenary information about mother's most recent brush with the law. R.'s status will remain subject to further order of the trial court.

Costs are assessed to the petitioner.

_____
WILLIAM H. INMAN, SENIOR JUDGE